|                                                                 |        |
|-----------------------------------------------------------------|--------|
| **UNITED STATES DISTRICT COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA** | JS-6 |

### CIVIL MINUTES -- GENERAL

| Case No. | **CV 23-1582-JFW(DFMx)** | Date: May 17, 2023 |
|---|---|---|

Title:     Octavio Agusto Arias -v- The Shyft Group GTB, LLC

---

**PRESENT:**

      **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
|---|---|
| None | None |

**PROCEEDINGS (IN CHAMBERS):**     ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [filed 4/3/2023; Docket No. 24]

     On April 3, 2023, Plaintiff Octavio Agusto Arias ("Plaintiff") filed a Motion to Remand. On April 17, 2023, Defendant The Shyft Group GTB, LLC ("Defendant") filed its Opposition. On April 24, 2023, Plaintiff filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for May 22, 2023 is hereby vacated and the matter taken off calendar. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

     On November 29, 2022, Plaintiff filed a Class Action Complaint in Los Angeles County Superior Court, alleging that Defendant employed him as an hourly-paid, non-exempt employee from approximately 2013 to approximately August 2022. According to Plaintiff's Complaint:

> Throughout Plaintiff's employment, Defendants failed to pay for all hours worked (including minimum, straight time, and overtime wages), failed to provide Plaintiff with legally compliant meal periods, failed to authorize and permit Plaintiff to take rest periods, failed to timely pay all final wages to Plaintiff when Defendants terminated his employment, failed to furnish accurate wage statements to Plaintiff, failed to indemnify Plaintiff for expenditures, and failed to produce requested employment records.

Complaint ¶ 14.  Plaintiff alleges the following claims for relief: (1) failure to pay minimum and straight time wages (Cal. Labor Code §§ 204, 1194, 1994.2, and 1197); (2) failure to pay overtime

wages (Cal. Labor Code §§ 1194 and 1198); (3) failure to provide meal periods (Cal. Labor Code §§ 226.7, 512); (4) failure to authorize and permit rest periods (Cal. Labor Code § 226.7); (5) failure to timely pay final wages at termination (Cal. Labor Code §§ 201-203); (6) failure to provide accurate itemized wage statements (Cal. Labor Code) § 226); (7) failure to indemnify employees for expenditures (Cal. Labor Code § 2802); (8) failure to produce requested employment records (Cal. Labor Code §§ 226 and 1198.5); and (9) unfair business practices (Cal. Bus. & Prof. Code §§ 17200, *et seq*. On behalf of himself and all other similarly situated, Plaintiff seeks, *inter alia*, unpaid minimum and straight time wages; liquidated damages; unpaid overtime wages; break premiums; wage statement penalties; waiting time penalties; unreimbursed business expenses; statutory penalties for Defendant's alleged failure to maintain accurate employee records; restitution; declaratory relief; and attorneys' fees.

On March 2, 2023, Defendant filed a Notice of Removal, alleging that this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 ("CAFA"). In support of its Notice of Removal, Defendant estimated that the aggregate value of all matters in controversy exceeds $5,073,430.31, using assumptions and estimates allegedly based on the allegations of Plaintiff's Complaint. *See* Notice of Removal ¶ 63.[1]

## II.     LEGAL STANDARD

"CAFA provides expanded original diversity jurisdiction for class actions meeting the amount in controversy and minimal diversity and numerosity requirements set forth in 28 U.S.C. § 1332(d)(2)." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090–91 (9th Cir. 2010); *see Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) ("A CAFA-covered class action may be removed to federal court, subject to more liberalized jurisdictional requirements"). CAFA vests district courts with "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and is a class action consisting of more than 100 members "in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d); *see also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013).

"[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating System Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). A defendant seeking to remove a case under CAFA need only file a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). A defendant's good faith allegation that the amount in controversy exceeds the $5 million CAFA jurisdiction threshold will suffice unless challenged; however, if challenged, Defendant bears the burden of proving the propriety of federal court jurisdiction by "a preponderance of the evidence." *Dart Cherokee*, 574 U.S. at 87-88. Under this burden, a defendant must provide evidence establishing that it is "more likely than not" that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). However, "the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019).

---

[1] In its Opposition to Plaintiff's Motion to Remand, Defendant now claims that the amount in controversy exceeds $5,130,595.

## III.     DISCUSSION

In his Motion, Plaintiff argues that Defendant has failed to prove by a preponderance of the evidence that the amount in controversy exceeds the $5,000,000 necessary for CAFA jurisdiction. In particular, Plaintiff claims that Defendant's calculation of the amount in controversy is based on flawed reasoning and faulty assumptions.  The Court agrees.

Defendant argues that, given the allegations in the Complaint, Defendant is entitled to, for example, assume an 80-100% violation rate for meal periods and 100% violation rate for rest periods.  Notice of Removal at ¶ 46. However, "when the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable ones." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015).  In this case, Defendant claims that its assumed violation rates are reasonable because Plaintiff alleges, for example, that Defendant maintained a "policy and practice" of not paying Plaintiff and the Class for all hours worked and alleges that Defendant "regularly" required non-exempt employees to work without a compliant meal and rest break. However, a "policy and practice" of doing something or "regularly" doing something does not necessarily mean *always* doing something or even 80% of the time doing something.[2]  *See Peters v. TA Operating LLC*, 2023 WL 1070350, at *5 (C.D. Cal. Jan. 26, 2023).

As Judge Bernal recently stated:

> The Court has little doubt that some courts have accepted a defendant's specific numerical assumption in a case in which the plaintiff alleged a policy, pattern and/or practice of illegal conduct. . . .[T]he problem is not necessarily that Defendants picked a violation rate that is too high. The problem is that the Court cannot discern why it picked that number at all, because Defendants never adequately explain their chain of reasoning and certainly provide no real evidence in support of it. As far as the Court can tell, Defendants simply picked that violation rate because it might seem low enough to be facially "reasonable" and still high enough to keep them on track to hit their magic number of $5,000,000. This approach amounts to little more than plucking a violation rate out of the air and calling it "reasonable"— a wasteful and silly, but routine, exercise in mathematical fantasyland.

*Id.* (quotations and citations omitted).  "If one is going to assume a violation rate based on vague language in a complaint, then there is no basis for assuming that a 100% or 50%--or even 25%-- violation rate is any more or less reasonable than a violation rate of once per week or once per month." *Gonzalez v. Randstad Pros. US, LLC,* 2022 WL 17081053, at *3 (C.D. Cal. Nov. 18, 2022).  As Judge Wu has stated:

---

[2]Plaintiff, in fact, alleges in his Complaint, that "Defendants regularly, but *not always*, required Plaintiff and the Class to work in excess of five consecutive hours a day without providing a 30-minute, uninterrupted, and duty-free meal period for every five hours of work, . . . ." Complaint ¶ 16 (emphasis added).

> Faced with a vague pleading, it seems to this Court that the much-more-sensible route would be to try to pin Plaintiff down, in state court (with no one-year time-limit staring Defendants in the face), with respect to what the Complaint's allegations actually mean with respect to violation rates. Perhaps Defendants do this by serving interrogatories or requests for admission, perhaps by deposition, perhaps by moving for a more definite statement. Perhaps they simply get Plaintiff to identify what the violation rates would be for Plaintiff, and then use that information as a sample to extrapolate out the calculation for the entire class.

*Toribio v. ITT Aerospace Controls LLC*, 2019 WL 4254935, at *3 (C.D. Cal. Sept. 5, 2019).

Ultimately, it is Defendant's burden to demonstrate by a preponderance evidence that the amount in controversy exceeds $5,000,000. The Court concludes that Defendant has failed to satisfy that burden. More specifically, Defendant has failed to adequately justify its assumed violation rates. Notably, in this case, even if the Court adjusts Defendant's assumed violation rates by a minor amount (e.g., a 75% violation rate for failure to provide meal breaks and a 75% violation rate for unpaid minimum and overtime wages), the amount in controversy would not exceed $5,000,000.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is **GRANTED**. This action is **REMANDED** to Los Angeles County Superior Court.

IT IS SO ORDERED.